UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GINA S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:18-cv-03690-SEB-TAB |
| | ) |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff appeals the Social Security Administration's denial of her application for disability benefits. Plaintiff argues that the Administrative Law Judge's factual findings and conclusions regarding her mental impairments, ability to sustain work, and daily activities are not supported by substantial evidence. For the reasons set forth below, the Magistrate Judge recommends that Plaintiff's request for remand be denied because the ALJ's findings were supported by substantial evidence. Any evidence omitted amounts to nothing more than harmless error.

**II.   Background**

Plaintiff filed an application for Social Security Disability and Supplemental Security Income benefits on January 27, 2015, alleging disability beginning October 16, 2013. The agency denied her claims initially and upon reconsideration. After a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 404.1520(a) and 416.920(a). First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015. Next, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, degenerative disc disease of the lumbosacral spine, degenerative joint disease of the bilateral sacroiliac joints, mild degenerative joint disease of the hips, and avulsion fracture of the greater trochanter of the left femur. The ALJ concluded that Plaintiff's shoulder, wrist, and knee impairments were non-severe. The ALJ found that Plaintiff's mental impairments of affective disorder, anxiety, and substance abuse were also non-severe and did not cause more than minimal limitation in her ability to perform basic mental work activities.

At step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step 4, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). Specifically, the ALJ found that Plaintiff was able to sit for one hour at a time, for a total of six hours in the eight-hour workday and could stand and/or walk for one hour at a time, for a total of six hours in the eight-hour workday. At step 4, the ALJ concluded that Plaintiff could perform past relevant work as a benefits clerk, as such work did not require the performance of work-related activities precluded by Plaintiff's RFC. Accordingly, the ALJ concluded that Plaintiff was not disabled from October 16, 2013, through January 28, 2019, the date of the ALJ's decision.

**III.  Discussion**

Plaintiff claims that the ALJ's factual findings are not supported by substantial evidence. This Court's review of an ALJ's decision is limited to determining whether the factual findings in that decision are supported by substantial evidence.  *See, e.g., Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  "Substantial evidence . . . is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

    a.  **Non-severe Mental Impairment**

Plaintiff first argues that the ALJ failed to build a logical bridge to her conclusion that Plaintiff does not suffer from severe mental impairment and did not adequately articulate her findings so they can be meaningfully reviewed.  For example, Plaintiff contends the ALJ's finding that Plaintiff alleged she suffered from bipolar disorder, but that it was "not a medically determinable impairment," is not supported by substantial evidence.  [Filing No. 11, at ECP p. 13.]  But the ALJ noted that the record contained only Plaintiff's self-reported diagnosis with bipolar disorder and associated symptoms, such as mood swings, irritability, and difficulty calming herself.  The actual medical evidence on record contained no such diagnosis, and a subjective claim alone is not a medically determinable impairment.  *See* 20 CFR § 404.1521 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or

3

a medical opinion to establish the existence of an impairment(s)."). Thus, this component of the ALJ's finding was supported by substantial evidence.

Plaintiff also contends that the fact that she stopped taking her medication on her own is further evidence that she was managing herself poorly. Plaintiff cites *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011), in which the Seventh Circuit noted that "people with serious psychiatric problems are often incapable of taking their prescribed medications consistently." In this case, the ALJ's decision acknowledges that Plaintiff reported that she stopped taking citalopram in 2016. It is not the role of the Court to reweigh evidence. *See, e.g.*, *Young*, 362 F.3d at 1001 ("In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the plaintiff] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or in general, substitute our own judgment for that of the Commissioner." (Internal citation omitted)). The ALJ relied on a multitude of other pieces of evidence to support her finding that Plaintiff did not have a severe mental impairment. [Filing No. 8-2, at ECF p. 21-22.]

Plaintiff also claims the ALJ did not address that Plaintiff had been contacted by a crisis team after reporting suicidal ideation with a plan and that the ALJ failed to raise and address contradictory evidence regarding her poor hygiene, history of substance abuse, and problems with anger. "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Here, the ALJ noted in her decision that Plaintiff denied past suicide attempts and suicidal ideation at the psychological consultative examination in March 2015. In the evaluation, Plaintiff had no history of suicide attempts, and the evaluator noted that there was no evidence of current suicidal, homicidal, or psychotic symptoms. [Filing No. 8-8, at

4

ECF p. 45-46.] However, the ALJ did not mention that in May 2017, a social worker called Plaintiff after Plaintiff gave a positive response to one question on a depression screening. Upon contacting Plaintiff via telephone, Plaintiff reported chronic suicidal thoughts since 1999. She also reported that on May 4, 2017, she had contemplated cutting her wrist, but ultimately did not after considering her religious beliefs and the fact that doing so would hurt. [Filing No. 8-11, at ECF p. 121-22.] Plaintiff denied any active suicidal intent or plan to harm herself or homicidal thoughts. The social worker concluded that Plaintiff did not seem to be an acute risk for self-harm.

      Even if it were error for the ALJ to fail to include reference to the May 2017 incident, it was at most harmless, as ultimately that evidence indicated Plaintiff denied any active suicidal intent and was not an acute risk for self-harm, which aligns with the evidence the ALJ did mention in her decision. *See, e.g.*, *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) ("[A]ny error on the ALJ's part in failing to discuss this evidence was harmless."). Thus, "[t]he ALJ's failure to address these specific findings. . . does not render his decision unsupported by substantial evidence because an ALJ need not address every piece of evidence in his decision. The ALJ need only build a logical bridge from the evidence to his conclusion." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (internal citations and quotation marks omitted).

      The Court now turns to Plaintiff's hygiene, history of substance abuse, and problems with anger. While the ALJ again may not have addressed every single piece of evidence presented, she gave a detailed analysis of the medical evidence in the record, including the findings and opinion of consulting psychologist Dr. Robbins. She also addressed Plaintiff's subjective report of being diagnosed with bipolar disorder but the lack of a medical diagnosis of such disorder, as discussed above, as well as Plaintiff's reports of a low tolerance for frustration and difficulty

5

calming herself.  Finally, the ALJ referenced the materiality of Plaintiff's past cocaine use.  The ALJ found that the objective evidence of record did not demonstrate a significant deficit in cognitive functioning or ability to concentrate.  She noted that the record contained evidence that was generally consistent with Plaintiff's testimony regarding the frequency with which she uses alcohol and cocaine while also pointing out that Plaintiff's primary care provider indicated that Plaintiff's history of cocaine abuse was in remission.  Thus, the ALJ found no evidence that Plaintiff's drug or alcohol use significantly contributes to her mental and physical impairments, building a logical bridge from the evidence to her conclusion.  *Id.*

Finally, Plaintiff points to the ALJ's claim that her neighbor's testimony was substantially similar to Plaintiff's and contends that the ALJ should have found this testimony bolstered Plaintiff's report.  Whether it bolstered Plaintiff's testimony or not, it does not change the outcome here.  The ALJ noted that limited weight was given to third-party statements, including that of Plaintiff's neighbor, and concluded that more weight should be given to the findings, conclusions, and opinions of the examining, reviewing and treating sources with more expertise and a lack of personal interest in the outcome of this case.  Accordingly, the ALJ's finding that Plaintiff did not suffer from mental impairment was supported by substantial evidence.

### b.  RFC to Perform Light Work

Next, Plaintiff contends that the ALJ's conclusion that Plaintiff had the residual functional capacity to perform light work is not supported by substantial evidence.  As noted above, the ALJ concluded that Plaintiff could sit for one hour at a time, a total of six hours in the eight-hour workday and could stand and/or walk for one hour at a time, a total of six hours in the eight-hour workday.

Plaintiff argues that while the ALJ did acknowledge the discrepancies in the length and circumference of her lower extremities and that she walked with a limp, the ALJ did not acknowledge that her gait had been described as antalgic due to a gout exacerbation. As to the discrepancy in Plaintiff's leg length, the ALJ referenced Dr. Wilson's examination of Plaintiff in March 2015, when he found that Plaintiff had a slight, non-antalgic limp due to one leg being longer than the other, but noted that her gait was brisk, sustainable, and quite stable. [Filing No. 8-8, at ECF p. 51.] The ALJ specifically stated that while "Dr. Wilson did not provide a function-by-function assessment of [Plaintiff's] ability to perform work related activities, I have considered his examination findings in determining [Plaintiff's] residual functional capacity." [Filing No. 8-2, at ECF p. 25.] Nevertheless, Plaintiff argues that the ALJ's decision does not show that the ALJ took into consideration her pain or the exacerbating effects of her non-severe impairments, including her gout or leg length discrepancy. *See, e.g., Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("[The ALJ] refused to give any weight to the plaintiff's asthma and incontinence. She said that neither condition was disabling, and that is correct. But she failed to consider their effect in exacerbating the problems created by chronic severe pain.").

As noted in SSR 96-8p, an RFC assessment must be based on all relevant evidence in the record, including but not limited to: medical history; the effect of treatment; reported daily activities; and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. *See* SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996). The ALJ in this case noted that Plaintiff's statements regarding "the intensity, persistence, and limiting effects of her symptoms" were not entirely consistent with the record evidence. [Filing No. 8-2, at ECF p.26.] The ALJ gave as an example that Plaintiff's physical examination findings showed normal hip and lumbar spine range of motion with brisk, sustainable, and steady

gait, and concluded that this evidence did not support Plaintiff's claim that she could not stand for more than 15 minutes or walk more than one to four blocks.  The ALJ also noted Plaintiff's complaints of pain, such as in September 2016 when she complained of worsening left hip pain.  Plaintiff was prescribed naproxen and recommended to follow up in two weeks, but the record contained very few treatment records for the time period that followed, which the ALJ found suggested Plaintiff did not frequently seek treatment for her impairments during that time period.  Then, in December 2016, the ALJ noted that Plaintiff saw her primary care physician, Dr. Misumi, and complained of lower back pain at a level two of ten.  Dr. Misumi did not prescribe additional pain medicine beyond the naproxen that she was still taking.  The ALJ also noted that at the January 2019 hearing, Plaintiff walked without an assistive device.  [Filing No. 8-2, at ECF p. 26.]  Hence, the ALJ did acknowledge Plaintiff's complaints of pain, but ultimately the ALJ's finding that Plaintiff nonetheless was capable of performing light work, in light of how her self-reported symptoms and the rest of the record medical evidence did not necessarily align, was supported by substantial evidence.

In relation to gout, the record evidence shows two instances where Plaintiff had issues.  First, on January 6, 2016, Plaintiff sought treatment for gout in her right foot.  Plaintiff told the medical provider that she had been drinking over the holidays and was aware this might have caused her gout to flare up.  [Filing No. 8-10, at ECF p. 17.]  The second instance was reported on March 10, 2016, when Dr. Holston noted that Plaintiff's gait was antalgic due to a subacute gout attack.  [Filing No. 8-10, at ECF p. 6-7.]  Two days earlier, on March 8, 2016, Plaintiff saw Dr. Vaughn for pain "all over [her] body."  [Filing No. 8-10, at ECF p. 9.]  At that time, Plaintiff noted that she had just recently spent "a week or more" celebrating her birthday and she maybe was "having to pay for it."  [Filing No. 8-10, at ECF p. 10.]  At the hearing before the ALJ in

January 2019, Plaintiff testified in reference to these two noted instances that while she has had ongoing issues of gout, "it's not as bad" now and that she found out her gout was mainly caused by food she was eating. [Filing No. 8-2, at ECF p. 57.] At most, the ALJ committed harmless error in not recounting Plaintiff's limited gout flare ups and treatment. A remand to address these two isolated incidents would not alter the ALJ's decision, and since the harmless error doctrine applies in review of Social Security decisions, such remand is not necessary. *See, e.g., Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("[I]n administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision.").

Plaintiff also argues that the ALJ's lack of a finding of any manipulative restrictions was harmful error because of its effect on the vocational analysis. [Filing No. 11, at ECF p. 14.] The ALJ found that Plaintiff could not crawl or work on ladders, ropes, or scaffolds, but could occasionally balance, stoop, crouch, kneel, and climb ramps or stairs. The ALJ additionally found that Plaintiff can tolerate occasional exposure to industrial vibrations and cannot tolerate any exposure to unprotected heights or dangerous, moving machinery. Finally, the ALJ found that Plaintiff cannot work on wet, slippery, or uneven surfaces. [Filing No. 8-2, at ECF p. 24.] Plaintiff maintains that substantial evidence does not support the ALJ's conclusion that she had no restrictions in her ability to use her hands because the record shows she has degenerative joint disease of the right wrist and an x-ray showed degenerative spurring in the left wrist.

However, the ALJ did consider Plaintiff's allegation of hand and wrist pain and noted in her decision that Plaintiff indicated she has difficulty using her hands. [Filing No. 8-2, at ECF no. 24.] The ALJ also referenced Plaintiff's past surgery on her left wrist but pointed out that Plaintiff exhibited normal range of motion, motor strength, and grip strength and was able to

9

perform fine and gross movements effectively upon examination. [Filing No. 8-2, at ECF no. 21.][1] Accordingly, the ALJ reasonably considered Plaintiff's wrist injuries and did not commit harmful error in finding no additional restrictions on her ability to use her hands after balancing the evidence presented.

### c. Consideration of Daily Activities

Finally, Plaintiff argues that the ALJ's analysis of her daily activities is not supported by substantial evidence. As Plaintiff acknowledges, the ALJ noted that Plaintiff washed dishes twice a week, did laundry once a month, could perform personal care activities independently, picked up around her house, and took out the trash. [Filing No. 8-2, at ECF p. 26.] Plaintiff contends that her ability to perform these "limited daily activities" is not evidence that she can sustain competitive work. [Filing No. 11, at ECF p. 15.] The ALJ, however, did not place any undue weight on Plaintiff's ability to perform these daily activities, but rather assessed this evidence as one of several factors related to Plaintiff's RFC. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("The ALJ did not equate [the plaintiff's] ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules at the time the ALJ made his decision[.]"). Similarly, here the ALJ reviewed the objective medical evidence, Plaintiff's subjective symptoms, and additional opinion evidence. Under the totality of the evidence on

---

[1] The ALJ mentions this evidence earlier in her decision, during her Step 2 analysis. This Court reviews the decision of the ALJ in whole, and, therefore, we consider this evidence in support of her conclusions at this step as well. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 370, n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (Citation omitted)).

record, the ALJ concluded that Plaintiff had the RFC to perform light work. Therefore, the ALJ's assessment was reasonably articulated and supported by substantial evidence.

**IV.     Conclusion**

For these reasons, the Commissioner's decision should be affirmed. The Magistrate Judge recommends that the Court deny Plaintiff's brief in support of appeal and request for remand. [Filing No. 11].

Any objection to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/5/2019

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email